UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LEONARD O'CONNOR and CYAN
CONTRACTING CORPORATION,

                        Plaintiffs,

           -against-

NATIONAL GRANGE MUTUAL INSURANCE
COMPANY,

                      Defendant.
------------------------------------------------------------X

**MEMORANDUM OF DECISION AND ORDER**

09-CV-463 (ADS)(ETB)

**APPEARANCES:**

**Rabinowitz & Galina**
Attorneys for the Plaintiffs
94 Willis Avenue
Mineola, NY 11501
      By: Michael R. Galina, Esq., Of Counsel

**McElroy, Deutsch, Mulvaney & Carpenter, LLP**
Attorneys for the Defendant
Wall Street Plaza
88 Pine Street, 24th Floor
New York, NY 10005
      By:  Adam R. Schwartz, Esq.
           John W. Morris, Esq., Of Counsel

**SPATT, District Judge.**

Plaintiffs Leonard O'Connor and Cyan Contracting Corporation (collectively "Cyan") commenced this action against defendant National Grange Mutual Insurance Company ("National") seeking a declaration that a mortgage Cyan executed in favor of National has been satisfied based on the doctrine of *res judicata* or alternatively is not supported by consideration. Cyan also seeks other relief associated with National's refusal to release the mortgage. Presently before the Court is National's motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to

1

dismiss the cause of action seeking a declaration that the mortgage has been satisfied based on the doctrine of *res judicata*. For the reasons set forth below, National's motion is granted.

## I. BACKGROUND

### A. The Parties

Leonard O'Connor is the president and sole shareholder of plaintiff Cyan Contracting Corporation, a company that installs fire sprinkler and fire suppression systems. National Grange Mutual Insurance Company is a Florida Corporation in the business of issuing surety bonds. At an unspecific time, Cyan entered into a contract with the Dormitory Authority of the State of New York ("DASNY") for five separate construction projects. As a condition of the contract, DASNY required that Cyan provide performance and payment bonds (the "Bonds"). National, as a surety, agreed to supply Cyan with the Bonds for Cyan's DASNY contracts.

### B. The Underlying Action

On May 11, 2007, Cyan and Leonard O'Connor commenced an action against National in the United States District Court for the Southern District of New York before the Honorable Lewis A. Kaplan (the "Underlying Action") claiming, among other causes of action, that: (1) National tortiously interfered with Cyan's contract with DASNY by requesting that DASNY freeze payments to Cyan on all projects; (2) National breached its contract with Cyan by causing DASNY to cease payment on all projects and by failing to assist in the release of the retained sums; (3) National failed to promptly pay Cyan for work on the DNA Laboratory Project, and (4) National failed to provide proper documentation to DASNY to reduce the retained funds owed to Cyan and improperly appropriated retained funds for work Cyan performed prior to the mutual termination agreement with DASNY. See Cyan Contracting Corp. v. National Grange Mutual Ins. Co., NYSD, No. 07-CV-3749 (LAK) (HBP) (Complaint, Docket

Entry 1). National counterclaimed for, among other relief, indemnification for alleged losses for writing the surety bonds for Cyan, and security for future losses. (Answer in Underlying Action, Docket Entry 12.)

On July 9, 2008, after the parties represented to Judge Kaplan that they had reached a tentative settlement, Judge Kaplan issued an order dismissing the case "with prejudice and without costs subject to right to reinstate by serving and filing a notice to that effect on or before 9/8/08, if the settlement is not executed by then." (Order in Underlying Action, Docket Entry 18.) Subsequently, Judge Kaplan extended the deadline for reinstating the case to September 15, 2008 and then again to October 1, 2008. (Orders in Underlying Action, Docket Entry 19 & 20.) After the October 1, 2008 deadline passed without an executed settlement agreement and without either party informing the court that they had not executed a settlement, the case was deemed dismissed pursuant to Federal Rule of Civil Procedure 41(b). On January 27, 2009, National moved pursuant to Federal Rule of Civil Procedure 60(b) to vacate the order of dismissal. On June 16, 2009, Judge Kaplan denied National's motion on the ground that National knowingly allowed the deadline to reinstate the action to pass. (Order in the Underlying Action, Docket Entry 35.)

**C. The Instant Action**

On May 10, 2006, as security for the Bonds, Cyan and Leonard O'Connor entered into an agreement with National (hereafter the "Indemnity Agreement") stating that

> In order to indemnify and hold National Grange harmless from any loss, cost, damage or expense as a result of the issuance of any bond on behalf of Cyan . . . . Indemnitors [Cyan and Leonard O'Connor] will execute and return to National Grange, together with this executed Agreement, an executed note and mortgage in favor of National Grange in the sum of $1,000,000 on the real property located at 350 Paddock Way, Mattituck, New York . . . .

(Compl., ¶¶ 12–13 (quoting the Indemnity Agreement).)

3

Pursuant to the Indemnity Agreement, Cyan executed a promissory note to National in the amount of $1 million (the "Note").  In addition, Leonard O'Connor and his wife, Sandra O'Connor (the "O'Connor's"), executed a mortgage on the property located at 350 Paddock Way, Mattituck, New York ("the Property") to National in the amount of $1 million (the "Mortgage") and a guarantee on the Note (the "Guarantee").  According to Cyan, the Mortgage, Note, and Guarantee all state that as consideration for the collateral, National was required to make a loan to Cyan in the amount of $1 million.   However, Cyan alleges that National never gave Cyan a payment of $1 million.

Following the dismissal of the Underlying Action, on December 29, 2008, O'Connor and Cyan commenced this action against National in New York State Supreme Court, Suffolk County by way of filing a Motion for Summary Judgment in Lieu of Complaint.  Subsequently, on February 4, 2009, National Grange removed the action to federal court.  On June 30, 2009, United States Magistrate Judge Michael L. Orenstein entered a scheduling order directing Cyan to file a complaint in compliance with the Federal Rules of Civil Procedure by July 8, 2009, and for National Grange to file its Answer by July 15, 2009.

In accordance with Judge Orenstein's order, on July 6, 2009, Cyan filed the Amended Complaint.  Cyan's first cause of action seeks a declaratory judgment that the Mortgage has been satisfied on two grounds.  First, Cyan asserts that Mortgage is satisfied on the ground that Judge Kaplan's dismissal of the Underlying Action terminated the underlying debt and bars National from foreclosing on the Mortgage under the doctrine of *res judicata*.  In the alternative, Cyan contends that the mortgage is invalid for a lack of consideration.  The second cause of action is wholly dependent on the first, and seeks damages for disparagement of title based on National's failure to release or remove the mortgage.

On July 14, 2009, in lieu of an answer, National moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). In particular, National seeks the dismissal of the assertion in Cyan's first cause of action that the mortgage is satisfied based on the *res judicata* effect of the Underlying Action. National does not contest that the issues and evidence underlying their claims in the Underlying Action are the same issues and evidence implicated by Cyan's claim that the Mortgage is invalid for lack of consideration. Neither does National dispute that the dismissal of the Underlying Action pursuant to Rule 41(b) constitutes a dismissal on the merits. Rather, National contends that the dismissal of the Underlying Action had no bearing on its rights under the Mortgage because: (1) the dismissal did not extinguish Cyan's underlying debt and (2) the doctrine of *res judicata* does not preclude a subsequent action to foreclose the Mortgage. The Court addresses the merits of these two arguments below.

As a final matter, the Court notes that in response to National's motion to dismiss, Cyan submitted a number of documents in an effort to also obtain a ruling on its second ground for requesting a declaration that the Mortgage is invalid, namely that the Mortgage lacked consideration because National never provided Cyan with a $1 million loan. The Court declines to convert this motion to one for summary judgment and only addresses whether the Mortgage is invalid based on the dismissal of the Underlying Action.

## II. DISCUSSION

**A. Legal Standard**

Under the now well-established Twombly standard, a pleading should be dismissed under Rule 12(b)(6) only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167

5

L. Ed. 2d 929 (2007).  The Second Circuit has explained that, after Twombly, the Court's inquiry under Rule 12(b)(6) is guided by two principles.  Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a [pleading],' that 'tenet' 'is inapplicable to legal conclusions' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  Id. (quoting Iqbal, 129 S. Ct. at 1949).  "'Second, only a [pleading] that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a [pleading] states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Id. (quoting Iqbal, 129 S. Ct. at 1950).  Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief."  Iqbal, 129 S. Ct. at 1950.

In addition, in deciding National's motion, the Court considers the pleadings and orders in the Underlying Action and related actions, of which the Court is entitled to take judicial notice under Federal Rule of Evidence 201 ("Rule 201").  See Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991) (holding that on a motion to dismiss, the court may "consider matters of which judicial notice may be taken" under Federal Rules of Evidence 201 ("Rule 201"); Schenk v. Citibank/Citigroup/Citicorp, No. 10-CV-5056, 2010 WL 5094360, at *2 (S.D.N.Y. Dec. 9, 2010) ("Judicial notice may encompass the status of other lawsuits in other courts and the substance of papers filed in those actions."); accord Anderson v. Rochester-Genesee Regional Transp. Auth., 337 F.3d 201, 205 (2d Cir. 2003) (taking judicial notice of a district court opinion that was not submitted as part of the record on appeal); Rothman v. Gregor, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of a complaint filed in another action).

**B.  The SDNY Action**

In addition to the instant action and the Underlying Action, there is a third case between Cyan and National based on a dispute over the surety bonds and related security instruments for the five DASNY projects.  As with the present matter, following the dismissal of the Underlying Action, on December 17, 2008, Cyan commenced a separate action against DASNY and National in New York State Supreme Court, New York County, by way of filing a Motion for Summary Judgment in Lieu of Complaint.  Subsequently, on January 21, 2009, National removed the action to federal court in the Southern District of New York and the case was assigned to Judge Kaplan and United States Magistrate Judge Henry B. Pitman ("SDNY Action").  See Cyan Contracting Corp. v. National Grange Mutual Ins. Co., et al., No. 09-CV-603 (LAK) (HBP).  Both parties moved for summary judgment, and on July 11, 2011, Judge Pitman issued a Report and Recommendation to Judge Kaplan recommending that both of the parties' summary judgment motions be granted in part and denied in part ("the Report").  (SDNY Action, Docket Entry 70.)

As described in the Report, Cyan commenced the SDNY Action "[seeking] declarations that because its obligations to [National] were extinguished pursuant to the dismissal of the Underlying Action, [National] has no basis to withhold its consent to reduce retainage, and . . . no basis to maintain the assignments of contract funds."  (Report at 9 (internal quotation marks and citation omitted).)  The referenced assignments of contract funds were collateral given by Cyan to National to secure additional loans under the surety bonds.  Thus, the SDNY Action and the instant case share a common question, namely whether collateral provided by Cyan to National to secure an underlying debt that was the subject of National's counterclaims in the Underlying Action is still valid.  Both parties sought summary judgment on this issue.

7

The Report addressed the two issues disputed in the instant motion: (1) whether Cyan's obligations to National on its underlying debt were extinguished by the dismissal of the Underlying Action and (2) whether the doctrine of *res judicata* bars an action to recover on collateral issued by Cyan to secure its underlying debt. In the Report, Judge Pitman recommended that Cyan's motion for summary judgment on the two above-stated grounds be denied. By order dated September 27, 2011, Judge Kaplan adopted the Report. (SDNY Action, Docket Entry 77.)

Although not binding, the Court finds Judge Pitman's analysis of the parties' arguments and the relevant case law to be persuasive. Accordingly, as set forth below, the Court grants National's motion to dismiss Cyan's cause of action for a declaratory judgment on the ground that the Mortgage has been satisfied.

### C. Whether the Dismissal of National's Counterclaim in the Underlying Action extinguished Cyan's debt under the Indemnity Agreement

In the SDNY Action, Cyan argued that:

> the rights to receive payment that it assigned to NGM in 2006 should be declared void because the assignments were intended as collateral for Cyan's underlying debts to NGM, and, according to Cyan, its debts to NGM were terminated by the dismissal of the Underlying Action.

(Report at 28.) Similarly, in the instant case, Cyan contends that "[b]ecause the [Underlying Action] is dismissed with prejudice, Cyan and Leonard O'Connor owe no further obligations to National, the underlying Note and Mortgage has been satisfied". (Compl., ¶ 31.)

With respect to whether the Underlying Action terminated Cyan's underlying debt, Judge Pitman stated the relevant New York law as follows:

> [T]he weight of authority suggests that the unenforceability of a debt does not void a creditor's interest in any collateral. Hulbert v. Clark, 128 N.Y. 295, 298 (1891) (Holding that "when the security for a debt is a lien on property, personal or real, the lien is not

8

> impaired because the remedy at law for the recovery of the debt is barred."); Cracco v. Cox, 66 A.D.2d 447, 449, 414 N.Y.S.2d 404, 405 (4th Dep't 1979) (recognizing that "Federal and New York case law establishes that the right to foreclose a mortgage lien on property given to secure a debt which has not been discharged exists independently of the right to bring an action for money damages on the note."); Greenley v. Greenley, 114 A.D. 640, 643, 100 N.Y.S. 114, 117 (4th Dep't 1906) ("the fact that the notes may not be enforceable by an action at law, pure and simple, does not prevent the plaintiff from taking advantage of any other remedy available to [it]"); Estate of Amend, 107 Misc. 2d 497, 499, 435 N.Y.S.2d 235, 237 (Surr. Ct. Kings Cnty. 1980) ("while a creditor may be deprived of the right to enforce payment if the Statute of Limitations is timely interposed in an action on the note, the barring of an action on a secured debt does not affect the right to reach the security").

(Report at 29–30.) Judge Pitman then discussed a case from the United States Court for the Middle District of Georgia, Weston v. Towson, No. 04-CV-416, 2006 WL 2246206 (M.D. Ga. Aug. 4, 2006), which illustrated the principles from the above-stated cases in an analogous factual setting. As described by Judge Pitman:

> In [Weston], Weston bought real property from Towson; Towson agreed to finance $200,000 of the purchase price, and Weston issued a note to Towson that granted Towson a "security deed" to secure the note. Weston subsequently commenced an action against Towson for fraud and Towson counterclaimed, alleging that Weston was in default on the note. This action settled after mediation and was dismissed with prejudice. Several years later Weston sought to sell the land and commenced an action in Federal against Towson seeking to cancel the security deed and clear title to the land. The Court denied Weston's motion for summary judgment, explaining that the dismissal with prejudice of the action on the note did not impair the collateral or require that Towson's security interest be vacated.

(Report at 30.)

The relevant portion of the Weston case held as follows:

> Weston argues that the dismissal with prejudice of the 2001 lawsuit is "the functional equivalent of payment in full of . . . any liability Plaintiff has pursuant to the [$200,000] Promissory Note." (Pl.'s Mot. Summ. J., doc. 22, at 6.) Because Towson's counterclaim seeking payment on the $200,000 note was dismissed

9

> with prejudice in 2001, Weston points out that "Towson is, therefore, barred from asserting in this case, or otherwise, any claim on the promissory note and also on the Deed." (Id. at 7) (emphasis supplied). From that observation, Weston reasons that: "As Towson is now barred from asserting any claim on the Promissory Note, the Security Deed that secured it, is a mere cloud on the title of the subject real estate . . . [because the security deed] no longer secures any viable obligation of Weston to Towson." (Id.)
>
> Weston is only partially right. The dismissal with prejudice of the 2001 suit (and thus the dismissal of Towson's counterclaim for nonpayment of the original $200,000 note) does, as Weston suggests, serve to preclude Towson under the doctrine of *res judicata* from ever again bringing suit to collect on the $200,000 note. But the dismissal of Towson's claim on the note, and the procedural bar it now imposes, foreclosed only one of the possible remedies at Towson's disposal for satisfying the debt owed by Weston. It did not extinguish the debt itself. Towson, as the payee of a note secured by real property, has more than one remedy for enforcing the underlying debt. One of those remedies arises under the note –- an in personam claim against Weston as the maker of the note. Two additional remedies arise under the deed to secure debt -- the power of sale and the right to foreclose on the property. The dismissal of Towson's in personam claim against Weston for payment on the note did not extinguish Towson's rights under the security deed because Weston never satisfied the debt evidenced by the note. Thus, the 2001 dismissal did not render the security deed invalid.

2006 WL 2246206 at *5 (footnotes omitted).

As in the instant case, Cyan attempted to distinguish the New York line of cases based on the fact that the dismissal of the first action on the underlying debt was on statute of limitations grounds, as opposed to Rule 41(b). In rejecting this argument, Judge Pitman stated:

> Cyan attempts to distinguish most of the cases cited by NGM by asserting that in most of those cases, the underlying debt was rendered unenforceable by virtue of the statute of limitations, rather than by a judicial dismissal with prejudice. Although this distinction exists with respect to most of the cases cited above, Cyan does not explain why this distinction makes a difference, and, in any event, this factual difference does not exist with respect to Weston. More importantly, however, Cyan cites no authority for the proposition that is central to its argument -- that the dismissal

10

> with prejudice of a secured debt ipso facto results in a release of the collateral.

(Report at 32.) Accord Weston, 2006 WL 2246206, at *6 ("Though the cited cases address situations in which a suit on the underlying note was barred by the statute of limitations-not by *res judicata*, as in this case-the Court finds that the legal principle for which they stand applies with equal force here."). Based on the foregoing analysis, Judge Pitman held that:

> Because Cyan has not demonstrated that the dismissal of the Underlying Action operates as an estoppel as to any factual issue and has not shown that even if such an estoppel existed, NGM's interest in any collateral assigned to it would be impaired, this aspect of Cyan's motion for summary judgment should also be denied.

(Report at 32.) The Court finds this analysis equally applicable to the instant case. Thus, "even though [National] cannot now maintain a suit to enforce the note evidencing the debt, [the Mortgage] remains valid, and National retains rights under it because [its] power of sale nor [its] right to foreclose on the property has yet to expire". Weston, 2006 WL 2246206, at * 6.

**D.  Whether the Mortgage is Satisfied Pursuant to the Doctrine of *Res judicata***

Cyan contends that, even if the underlying debt is not terminated, National is nevertheless precluded from foreclosing on the Mortgage under the doctrine of *res judicata* because the causes of action arises out of the same transaction or occurrence and involves the same underlying factual issues, namely whether Cyan owes National any payments on the underlying debt. Cyan's contentions in this regard lack merit.

The issue in this case is whether a party can pursue the equitable remedy when the failure to prevail on the legal remedy, while decided on the merits, was not fully litigated. The resolution of this issue turns on whether the principles of claim preclusion (*res judicata*) or issue preclusion (collateral estoppel) apply. Judge Pitman sets out the relevant caselaw with regard to *res judicata* (claim preclusion) and collateral estoppels (issue preclusion) as follows:

11

"*Res judicata* [or claim preclusion ] precludes parties from litigating issues 'that were or could have been raised' in a prior proceeding." Perez v. Danbury Hosp., 347 F.3d 419, 426 (2d Cir. 2003), quoting Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 284–85 (2d Cir. 2000); accord Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir. 1998). "To prove that a claim is precluded under this doctrine, 'a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.'" Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001), quoting Monahan v. N.Y. City Dep't of Corr., supra, 214 F.3d at 284–85; see also Allen v. McCurry, supra, 449 U.S. at 94; Burgos v. Hopkins, 14 F.3d 787, 789 (2d Cir. 1994); Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343, 345–46 (2d Cir. 1995); Henik v. Labranche, 433 F. Supp. 2d 372, 378 (S.D.N.Y. 2006) (Sweet, D.J.); Word v. Croce, 230 F. Supp. 2d 504, 508–09 (S.D.N.Y. 2002) (Swain, D.J.).

"Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." Marvel Characters, Inc. v. Simon, supra, 310 F.3d at 288; see Boguslavsky v. Kaplan, 159 F.3d 715, 719–20 (2d Cir. 1998); see also Comm'r of Internal Revenue v. Sunnen, 333 U.S. 591, 598 (1948) ("Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel."). To assert a defense of collateral estoppel successfully, a party must establish four elements: "'(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'" Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006), quoting Purdy v. Zeldes, 337 F.3d 253, 258 & n.5 (2d Cir. 2003); accord In re Teligent, Inc., 640 F.3d 53, 61 (2d Cir. 2011); Uzdavines v. Weeks Marine, Inc., 418 F.3d 138, 146 (2d Cir. 2005); Marvel Characters, Inc. v. Simon, supra, 310 F.3d at 288–89. "The 'fundamental notion' of the doctrine of collateral estoppel, or issue preclusion, 'is that an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the same parties or their privies.'" Ali v. Mukasey, 529 F.3d 478, 489 (2d Cir. 2008), quoting United States v. Alcan Aluminum Corp., 990 F.2d 711, 718–19 (2d Cir. 1993); accord Lord v. Int'l Marine Ins. Servs., Docket No. 09-4436-CV, 2011 WL 1485973 at *1 (2d Cir. Apr. 20, 2011); see Nevada v. United States, 463 U.S. 110, 130 n.11

> (1983) (Collateral estoppel "can be used only to prevent 'relitigation of issues actually litigated' in a prior lawsuit."), quoting Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979).
>
> Collateral estoppel will not be applied where it would lead to an unfair result. Parklane Hosiery Co. v. Shore, supra, 439 U.S. at 330–31 (application of collateral estoppel may be unfair where prior litigations have yielded inconsistent results); Bear, Stearns & Co. Inc., v. 1109850 Ontario, Inc., 409 F.3d 87, 91 (2d Cir. 2005) (same).

(Report at 19–21.)

Judge Pitman then noted that because the Underlying Action "ended in an aberrational way", "[d]iscerning what preclusive effect, if any, the dismissal of the Underlying Action has . . . is a difficult task" because: (1) "several of the claims and counterclaims in the Underlying Action appear to be mutually exclusive, . . . such that dismissal of one claim cannot imply that the complementary claim by the adverse party has merit" and (2) the court cannot measure the preclusive effect of the Underlying Action based on the intent of the parties because of the "absence of a formal settlement agreement resolving the claims and counterclaims in that underlying action". (Report at 22–23.) Based on the facts of the case and a review of the relevant caselaw, Judge Pitman held:

> In light of the absence of any indication that the parties intended a broader preclusive effect, I conclude that the dismissal of the Underlying Action results in preclusion of the specific claims asserted there but does not preclude the litigation of any factual issue and does not constitute an adjudication of any factual issue.

(Report at 23.)

The Court agrees with this analysis and finds that claim preclusion only bars the "specific claims asserted" and does not bar the litigation of claims not raised in the underlying action relating to collateral securing the underlying debt. Moreover, because the issues were not fully litigated, under the doctrine of issue preclusion, the dismissal of the Underlying Action does not

13

preclude the adjudication of any factual issue, including the existence of the underlying debt. Furthermore, in the instant case, there is even less of an argument to support the application of claim preclusion to bar an action on the Mortgage by virtue of the fact that National could not have sought the remedy of foreclosure in the Underlying Action.

*Res judicata* not only bars parties from relitigating the same cause of action, but also "prevents litigation of a matter that could have been raised and decided in a previous suit, whether or not it was raised." Murphy v. Gallagher, 761 F.2d 878, 879 (2d Cir. 1985); see also L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc., 198 F.3d 85, 87–88 (2d Cir. 1999). In other words, the doctrine precludes subsequent litigation involving any legal questions that may arise from the same transaction or occurrence. Cieszkowska v. Gray Line New York, 295 F.3d 204, 205 (quoting L-Tec Elecs. Corp., 198 F.3d at 88). However, it is well-settled that, even where the legal questions arise out of the same transaction or occurrence, "*res judicata* does not bar subsequent litigation when the court in the prior action could not have awarded the relief requested in the new action". Marvel Characters, Inc. v. Simon, 310 F.3d 280, 287 (2d Cir. 2002) (citing Leather v. Eyck, 180 F.3d 420, 425 (2d Cir. 1999); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994); Davidson v. Capuano, 792 F.2d 275, 278 (2d Cir. 1986)); Overview Books, LLC v. U.S., 755 F. Supp. 2d 409, 415 (E.D.N.Y. 2010) ("*Res judicata* . . . is inapplicable where the initial forum was not empowered to grant the full measure of relief available in the subsequent lawsuit.").

Under New York law, an action "in which the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property shall be in the county in which any part of the subject of the action is situated". N.Y. C.P.L.R. § 507 (McKinneys 2005). In the instant case, the Property is located in the Eastern District of New York. Thus, there was a jurisdictional

and statutory barrier that prevented National from seeking the remedy of foreclosure in the Underlying Action. Thus, although the two causes of action arise from a common transaction, the doctrine of *res judicata* does not bar a subsequent action on the mortgage. See Thomas and Agnes Carvel Found. v. Carvel, 736 F. Supp. 2d 730 (S.D.N.Y. 2010) ("*Res judicata* also does not apply if 'formal jurisdictional or statutory barriers' previously prevented the plaintiff from 'presenting to a court in one action the entire claim including any theories of recovery or demands for relief that might have been available to him under applicable law.'") (quoting Jacobson v. Fireman's Fund Ins. Co., 111 F.3d 261, 265 (2d Cir. 1997)).

Cyan objected to Judge Pitman's Report, raising a number of additional arguments also asserted in the instant case. Similar to Judge Kaplan's ruling, the Court finds that none of these arguments compel a different result.

First, Cyan contends that the decisions in Monetary Funding Group, Inc. v. Pluchino, 2006 WL 2193608 (Superior Ct., Fairfield, Conn. July 19, 2006) and Central Mortgage Holdings v. Mannix, 18 F. Supp. 2d 162 (D. Conn. 1998) support the contention that *res judicata* applies to bar a subsequent action on a mortgage following the dismissal of a claim on the underlying debt. In contrast to Weston these cases are both legally and factually distinguishable.

In Centra, the plaintiff's initial action to foreclose a mortgage was dismissed for failure to prosecute—and therefore, like a Rule 41(b) dismissal, on the merits—and the plaintiff sought to bring a subsequent action on the note. Under Connecticut law, "a mortgagee may choose to: 'pursue its remedy at law on the notes, or to pursue its remedy in equity upon the mortgage, or to pursue both . . . .'" 18 F. Supp. 2d at 166 (quoting Wendell Corp. Trustee v. Thurston, 239 Conn. 109, 116, 680 A.2d 1314 (Conn. 1996)). The court found that the subsequent action was barred by the principles of *res judicata* because the plaintiff "had the opportunity to raise the

15

claim on the note" in the initial lawsuit. Id. at 167 (internal quotation marks and citations omitted). As previously noted, because the Property is located in the Eastern District, National did not have the "opportunity to raise the claim" to foreclose the mortgage. Moreover, unlike Connecticut law, which permits a party to bring an action on the note and the mortgage in one proceeding, New York law specifically provides that "[t]he holder of a note and mortgage may proceed at law to recover on the note or proceed in equity to foreclose on the mortgage, but must only elect one of these alternate remedies". Gizzi v. Hall, 309 A.D.2d 1140, 1141, 767 N.Y.S.2d 469, 471 (3d Dep't 2003); see also McSorley v. Spear, 13 A.D.3d 495, 789 N.Y.S.2d 52 (2d Dep't 2004).

The other case cited by Cyan, Mortgage Funding, involved a subsequent action at law on the debt following the dismissal based on an adjudication of the merits of an action to foreclose on a mortgage. In the underlying action, the court dismissed the claim on the grounds that "the plaintiff had acted with unclean hands, unconscionably, and in violation of the Connecticut Unfair Trade Practices Act" in obtaining the note. 2006 WL 2193608, at *1. Under Connecticut General Statute § 49-1 ("Conn. Gen. Stat. § 49-1"), which states that "[t]he foreclosure of a mortgage is a bar to any further action upon the mortgage debt, note or obligation against the person or persons who are liable for the payment thereof . . . ." Conn. Gen. Stat. § 49-1. Thus, based in part on the fact that the underlying action was dismissed after an adjudication on the merits, and in light of Conn. Gen. Stat. § 49-1, the court in Mortgage Funding dismissed the action on the note as barred by the doctrine of *res judicata*. Here, there was no adjudication on the merits in the Underlying Action, nor has Cyan pointed to any New York law equivalent to Conn. Gen. Stat. § 49-1. Accordingly, the analysis in Mortgage Funding has no application to the instant matter.

16

Finally, Cyan attempts to distinguish the analysis in Weston on the ground that the initial action on the underlying debt was dismissed pursuant to Rule 41(b) earlier in the litigation. However, the holding in Weston is premised on the legal effect of a dismissal on the merits of an available remedy, not on what stage the litigation was in when the case was dismissed. Cyan does not cite any authority for the contention that the stage of the litigation should influence whether a dismissal on the merits of a remedy on an underlying debt constitutes a termination of that debt.

### III. CONCLUSION

For the foregoing reasons, the Court finds that the dismissal on the merits of the Underlying Action did not extinguish the debt secured by the Mortgage and does not bar National from foreclosing on the Mortgage. Thus, the Court grants the motion to dismiss the first cause of action to the extent it seeks a declaratory judgment that the mortgage is satisfied based on the preclusive effect of the Underlying Action. The parties are directed to appear before the Court for a conference on October 13, 2011, at 9:30am to set a summary judgment schedule on Cyan's remaining causes of action for a declaration that the Mortgage is invalid for lack of consideration, and disparagement of title based on National's failure to release the Mortgage.

**SO ORDERED**.
Dated: Central Islip, New York
September 30, 2011

                                            _/s/ Arthur D. Spatt_
                                              ARTHUR D. SPATT
                                         United States District Judge